UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QUBE FILMS LTD., NAVID SOOFI, and MATT KELLEY FILMS, LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> BERT PADELL, PADELL AND COMPANY, and T.D. BANK N.A., <br><br> Defendants. | Case No.: 1:13-cv-08405-AJN |

**DEFENDANT TD BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Seth M. Kean
REED SMITH LLP
599 Lexington Avenue
New York, NY  10022-7650
Telephone: +1 212 521 5400
Facsimile: +1 212 521 5450
skean@reedsmith.com

Mary J. Hackett
Nellie E. Hestin
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA  15222-2724
Telephone: +1 412 288 3131
Facsimile: +1 412 288 3063
mhackett@reedsmith.com
nhestin@reedsmith.com

*Counsel for Defendant TD Bank, N.A.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF ALLEGATIONS IN THE AMENDED COMPLAINT ......................................... 2

ARGUMENT .................................................................................................................................. 4

    I.    Plaintiffs' Breach of Fiduciary Duty Claim Fails Because The Amended Complaint Does Not Demonstrate That TD Bank Owed Plaintiffs A Fiduciary Duty. ............................ 5

    II.    Plaintiffs' Negligence and Gross Negligence Claims Fail Because TD Bank Did Not Owe A Duty Of Care To Plaintiffs, Who Were Not TD Bank Customers. ....................... 8

    III.    Plaintiffs' Gross Negligence Claim Fails For The Additional Reason That Plaintiffs Have Not Alleged TD Bank Engaged In Conduct Rising To The Level Of Gross Negligence. ............................................................................................................... 11

    IV.    Plaintiffs' Tortious Interference Claim Fails Because Plaintiffs Have Not Plausibly Alleged That TD Bank Acted With Intent To Procure A Breach Of Contract. ..................... 12

    V.    Dismissal With Prejudice Is Appropriate Where, As Here, Amendment Would Be Futile. ............................................................................................................................. 13

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

Page

**Cases**

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*,
503 F. App'x 51 (2d Cir. 2012) ..................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 4, 5, 7

*Ashmore v. Prus*,
510 F. App'x 47 (2d Cir. 2013) ................................................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................................4

*Cromer Fin. Ltd. v. Berger*,
137 F. Supp. 2d 452 (S.D.N.Y. 2001) ................................................................................. 9, 11

*East Meadow Driving Sch., Inc. v. Bell Atl. Yellow Pages Co.*,
708 N.Y.S.2d 701 (N.Y. App. Div. 2000) ............................................................................ 9, 10

*Eugenia VI Venture Holdings, Ltd. v. Glaser*,
370 F. App'x 197 (2d Cir. 2010) ................................................................................................5

*Farash v. Cont'l Airlines, Inc.*,
574 F. Supp. 2d 356 (S.D.N.Y. 2008) ................................................................................ 11, 12

*Grace ex rel. Fox v. Corn Exch. Bank Trust Co.*,
287 N.Y. 94 (1941) ....................................................................................................................6

*JBCHoldings NY, LLC v. Pakter*,
931 F. Supp. 2d 514 (S.D.N.Y. 2013) ........................................................................................7

*Kolbeck v. LIT Am., Inc.*,
923 F. Supp. 557 (S.D.N.Y. 1996) ...........................................................................................10

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (N.Y. 1996) ................................................................................................ 12, 13

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ................................................................................................. 8, 9

*Mancuso v. Rubin*,
861 N.Y.S.2d 79 (N.Y. App. Div. 2008) ..................................................................................11

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
431 F. App'x 17 (2d Cir. 2011) ..................................................................................................9

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
261 F.R.D. 13 (S.D.N.Y. 2009) ........................................................................................ 5, 6, 9

*Peoples Westchester Sav. Bank v. F.D.I.C.*,
961 F.2d 327 (2d Cir. 1992) ......................................................................................................6

*Plasticware, LLC v. Flint Hills Resources, LP*,
    852 F. Supp. 2d 398 (S.D.N.Y. 2012) ................................................................................. 12

*Regions Bank v. Wieder & Mastroianni, P.C.*,
    423 F. Supp. 2d 265 (S.D.N.Y. 2006) ............................................................................... 5, 7

*Renner v. Chase Manhattan Bank*,
    1999 WL 47239 (S.D.N.Y. Feb. 3, 1999) ........................................................................ 9, 10

*Republic Nat'l Bank v. Hales*,
    75 F. Supp. 2d 300 (S.D.N.Y. 1999) ..................................................................................... 5

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*,
    158 F. Supp. 2d 335 (S.D.N.Y. 2001) ........................................................................... 5, 7, 8

*Tzaras v. Evergreen Int'l Spot Trading, Inc.*,
    2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) ...................................................................... 8, 9

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011) ................................................................................................ 13

**PRELIMINARY STATEMENT**

In suing TD Bank, N.A. ("TD Bank" or "TD"), Plaintiffs have improperly sought to drag TD Bank into a dispute between Plaintiffs and other parties over funds allegedly set aside to produce Plaintiffs' movie, "The Salesman." Plaintiffs allege that they entered into an arrangement whereby (i) Ark Capital Ventures Ltd. ("ACV"), Napolean Grier Enterprises ("NGE"), and their principals would assist Plaintiffs in raising funds to produce the film, and (ii) Defendants Bert Padell and Padell & Company would act as an escrow agent and would control the funds contributed by Plaintiffs, ACV, and NGE. Plaintiffs now claim that Padell improperly released the funds in the alleged escrow account to ACV and NGE, and that, contrary to their representations, ACV and NGE never raised money for the movie. Distilled down, Plaintiffs' claims against TD Bank are based on nothing more than the fact that the disputed funds were maintained in an account at TD. Plaintiffs' theory is deeply flawed and their Amended Complaint against TD Bank should be dismissed.

Plaintiffs' claims for breach of fiduciary duty, negligence, and gross negligence all fail because TD Bank did not owe Plaintiffs a legal duty. Plaintiffs did not have an account at TD Bank, they did not enter into any written agreements with TD Bank, and they did not have any other direct business relationship with TD Bank. Plaintiffs' newfound assertion that TD was aware of the contents of the escrow agreement between Padell and Plaintiffs is meritless, and, in any event, not supported by any well-pleaded facts. Plaintiffs' failure on this point is particularly significant because Plaintiffs only made this assertion, tellingly made on "information and belief," after TD Bank demonstrated in its initial motion to dismiss that TD could not be sued for breaching the escrow agreement because it was not a party to the agreement. But even if Plaintiffs had made the factual showing required by *Iqbal* and *Twombly* (which they have not), Plaintiffs have not shown that TD Bank voluntarily agreed to undertake any duty of care to

- 1 -

Plaintiffs. Plaintiffs cannot get around the fact that TD was not a party to the escrow agreement simply by making the unsubstantiated and expedient assertion that TD nevertheless knew about its contents and did not issue a written objection to its terms. Plaintiffs' negligence, gross negligence and breach of fiduciary duty claims should be dismissed.

Plaintiffs' new claim for tortious interference likewise does not withstand scrutiny. Under New York law, Plaintiffs must plausibly allege both that TD Bank knew of the existence of the escrow agreement, and that TD Bank intentionally induced ACV or Padell to breach the agreement. Plaintiffs have pleaded no facts supporting either of those elements, and therefore, Plaintiffs' tortious interference claim also should be dismissed.

## SUMMARY OF ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiffs Qube Films, Ltd. ("Qube"), Navid Soofi ("Soofi"), and Matt Kelley Films, Ltd. ("MKF") (collectively, "Plaintiffs") allege that they are film producers. Am. Compl. ¶ 2. Plaintiffs contend that they entered into two basic agreements regarding funding for their film, "The Salesman." *Id.* ¶¶ 7-13. On March 8, 2011, Qube allegedly entered into a funding agreement (the "March 8 Deal Sheet") with NGE and ACV. *Id.* ¶ 12. The March 8 Deal Sheet was drafted by Padell's attorney and allegedly executed by NGE, ACV, Padell, Qube, and MKF. *Id.* ¶¶ 11-12.[1] Plaintiffs do not allege that TD Bank was a party to the March 8 Deal Sheet. The March 8 Deal Sheet provided that NGE and ACV would obtain $4.8 million for Plaintiffs' project, and Qube would provide $1.2 million. *Id.* ¶ 12. According to the March 8 Deal Sheet, the funds were to be deposited "into an escrow account ("Escrow") at TD Bank located at 90 Fifth Avenue, New York NY 10011 ref. Bert Padell, IOLA Account pursuant to a mutually agreed

---

[1] The March 8 Deal Sheet is attached to the Amended Complaint as Exhibit 1. It bears the signatures of only NGE, ACV, and Qube.

upon Escrow Agreement." Am. Compl. Ex. 1, ¶ 2. The March 8 Deal Sheet names Bert Padell as "escrow agent for this transaction." Am. Compl. ¶ 12.

At the same time, a subset of these contracting parties – ACV, Qube, and Padell as "Escrow Agent" – also allegedly entered into an "Escrow Agreement" drafted by Padell's attorney. *Id.* ¶¶ 11, 13. Plaintiffs allege that the Escrow Agreement "designates TD Bank as the 'Funding Bank Institute' with enumerated duties including 'fiduciary responsibility' for the transaction, with its officer Cerwin Cox named as point person for the bank," but Plaintiffs do not allege that TD Bank or Mr. Cox was a party to the Escrow Agreement. *Id.* ¶ 13 ("Contemporaneously, on March 8, 2011 the parties entered into the contemplated Escrow Agreement (the 'Escrow Agreement') (Exhibit 2) with Richmond signing on behalf of [ACV] and Mr. Soofi on behalf of [Qube], and Defendant Padell as 'Escrow Agent.'").

Shortly after execution of these agreements, Plaintiffs allegedly deposited $510,000 into Padell's IOLA account. *Id.* ¶ 18. Then, on March 11, 2011, Qube executed a "First Amendment" to the Deal Sheet and a few days later, deposited an additional $390,000 into the account. *Id.* ¶¶ 18-19. Plaintiffs also allege that they "signed off" on written instructions to Padell and TD Bank regarding the release of funds in the escrow account. *Id.* ¶¶ 22-23. In relevant part, the "Escrow Instructions" allegedly provided that the funds deposited by Qube would be used by NGE and ACV to obtain a bank instrument, which, if accepted by Qube, would result in release of the escrow funds. *Id.* ¶ 23; *see also* Am. Compl. Ex. 4, ¶ 2 ("[Qube] and associated parties shall make a determination of acceptance or rejection of the presented SWIFT via email to NGE.").

On March 15, 2011, Plaintiffs issued written instructions to Padell to release $510,000 in the attorney IOLA account "for and in full benefit of [Qube], [MKF], and motion picture,

Salesmen." Am. Compl. ¶ 26. Plaintiffs now claim that they were misled into issuing these instructions because the bank instrument provided by NGE and ACV allegedly did not comply with the Escrow Instructions, the Deal Sheet, the Escrow Agreement, or the First Amendment. *Id.* ¶¶ 26, 30. Nonetheless, Padell allegedly released the funds. *Id.* ¶ 28. Moreover, he allegedly released the funds to NGE and ACV instead of to Qube and MKF. *Id.*

On April 12, 2011, NGE proposed another amendment to the Deal Sheet (the "April 12 Deal Sheet Amendment"), reducing the total budget for the project and cutting NGE's financial contribution in half. *Id.* ¶ 35. NGE and ACV agreed to deposit their share of the funding in the escrow account by April 15, 2011. *Id.* ¶ 37. NGE and ACV never procured any funding for the project. *Id.* ¶ 43. Plaintiffs allege that sometime after April 15, 2011, the remaining $300,000 in the account was released to NGE and ACV without their direction or instruction. *Id.* ¶ 44. Plaintiffs allege that they have not been refunded the $900,000 they contributed to the account. *Id.* ¶ 42.

## ARGUMENT

Plaintiffs' Amended Complaint does not withstand examination under the pleading standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, a complaint must show more than a "sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, and must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555. Where a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" and dismissal is required. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Thus, the dispositive question is not whether the plaintiff later might be able to adduce facts supporting the causes of action asserted, but whether the facts actually pleaded are

sufficient in the first instance to support the claims. *Id.* Plaintiffs' Amended Complaint does not clear Rule 12(b)(6)'s plausibility bar.

**I.     Plaintiffs' Breach of Fiduciary Duty Claim Fails Because The Amended Complaint Does Not Demonstrate That TD Bank Owed Plaintiffs A Fiduciary Duty.**

Plaintiffs' breach of fiduciary duty claim fails because TD Bank did not owe Plaintiffs a fiduciary duty. To state a claim for breach of fiduciary duty, a plaintiff must allege: (1) a fiduciary duty owed by defendant to plaintiff, (2) violation of that duty, and (3) proximate causation of damages. *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 F. App'x 197, 199 (2d Cir. 2010).[2] To determine whether a fiduciary duty exists, "New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001). However, "[s]imply because one reposes trust or confidence in another does not give rise to a fiduciary duty; the trust must be accepted as well." *Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006), *aff'd*, 268 F. App'x 17 (2d Cir. 2008); *see also Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26-27 (S.D.N.Y. 2009) ("[U]nilateral trust or confidence does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well."), *aff'd*, 382 F. App'x 107 (2d Cir. 2010). Furthermore, "the confidential relationship must predate the reposal of trust or confidence." *Thermal Imaging*, 158 F. Supp. 2d at 343 (citations omitted).

As a threshold matter, "[i]t is well settled under New York law that the usual relationship of a bank and its customer is not a fiduciary one, but rather one of creditor and debtor." *Republic*

---

[2] TD Bank relies on New York cases herein because (i) Plaintiffs claim that the events giving rise to their Complaint took place in New York, (ii) Bert Padell and Bert Padell & Company are New York residents, (iii) the account at issue was allegedly opened at a New York branch of TD Bank, and (iv) Plaintiffs filed their lawsuit in New York. *See* Am. Compl. pp. 2, 4.

*Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 316-17 (S.D.N.Y. 1999), *aff'd*, 4 F. App'x 15 (2d Cir. 2001); *see also Musalli*, 261 F.R.D. at 26-27 (noting the "general rule that banks do not owe fiduciary duties either to non-customers or even to customers in a deposit or lending relationship"). The Second Circuit has also held that "a depository bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation." *2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 503 F. App'x 51, 54 (2d Cir. 2012); *see also Grace ex rel. Fox v. Corn Exch. Bank Trust Co.*, 287 N.Y. 94, 102 (1941) (holding that when bank accepted trust account it "assumed the obligation to pay out the moneys deposited in accordance with the directions of the trustee" and "assumed no other obligation"). Indeed, a bank may "'presume that the fiduciary will apply the funds to their proper purposes.'" *2006 Frank Calandra*, 503 F. App'x at 54.

The Second Circuit has applied this same principle to attorney IOLA accounts, holding that the New York IOLA statute "does not contemplate, indeed it seems to reject, any special duty owed by a bank to a beneficial owner by virtue of the account's IOLA status." *Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 332 (2d Cir. 1992). In fact, the Second Circuit observed that "[i]n maintaining an IOLA account, the lawyer, not the bank, is charged with a fiduciary duty to the client. Indeed, the bank has no greater obligation under the statute than to follow the instructions of the legal signatory – the lawyer." *Id.*

TD Bank did not owe Plaintiffs a fiduciary duty. Plaintiffs were not customers of TD Bank and did not have any other direct business relationship with TD Bank. Plaintiffs' allegation that they transferred funds to Padell's IOLA account at TD Bank is insufficient as a matter of law to impose a fiduciary duty to Plaintiffs on TD Bank. *See, e.g., 2006 Frank Calandra,* 503 F. App'x at

54. The Amended Complaint does not contain any well-pleaded factual allegations that would support a different result.

Plaintiffs' new argument – essentially, that TD Bank knew or should have known about the Escrow Agreement, and that TD assumed the fiduciary obligations purportedly imposed under the Escrow Agreement by allowing Plaintiffs to deposit funds in Padell's account – is meritless. Am. Compl. ¶ 49. As a starting point, Plaintiffs cannot establish that TD Bank owed Plaintiffs a fiduciary duty on the basis that TD "should have known" about the Escrow Agreement. Plaintiffs' argument is backwards. Plaintiffs first have to establish that TD Bank owed Plaintiffs a legal duty (which they have not done) before they can argue that TD Bank should have known certain facts about the Plaintiffs. *Thermal Imaging*, 158 F. Supp. 2d at 343. Plaintiffs also have not alleged a sufficient factual basis to show that anyone at TD Bank was aware of the existence of the Escrow Agreement or aware that it purported to impose fiduciary obligations on TD Bank. *See Iqbal*, 556 U.S. at 678. Plaintiffs have tellingly made this allegation on "information and belief" (Am. Compl. ¶ 15) but have failed to specify the factual basis underlying their alleged belief. *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526-27 (S.D.N.Y. 2013) (allegations on "information and belief" must be "accompanied by a statement of the facts upon which the belief is founded").

Even if Plaintiffs made this showing (which they have not), they cannot establish that TD Bank accepted the fiduciary responsibility purportedly imposed by the Escrow Agreement. *See Regions Bank*, 423 F. Supp. 2d at 270 (finding no fiduciary duty where although plaintiff "may have reposed trust or confidence in [defendant] by transferring the money into the account, this does not give rise to a fiduciary duty because [defendant] never accepted a relationship of trust or confidence with respect to" plaintiff). Mere awareness of the Escrow Agreement would not be sufficient to show that TD Bank accepted its terms.

Nor could acceptance of a fiduciary duty be plausibly inferred from TD Bank's alleged knowledge that Plaintiffs deposited funds in an account opened and controlled by Padell. Judge Chin's decision in *Thermal Imaging* is instructive. In that case, plaintiffs deposited shares with the defendant broker in an account in the name of Keystone, which was a company that had promised to extend plaintiffs a loan. 158 F. Supp. 2d at 343. Plaintiffs filed suit against the broker when Keystone failed to extend the loan and improperly transferred the shares of stock that served as collateral for the loan. *Id.* Plaintiffs argued that the broker owed them a fiduciary duty because the broker allegedly knew that the stock was collateral for a loan. *Id.* The court rejected plaintiffs' implied fiduciary duty argument, ruling that even if the broker knew the shares were collateral for a loan, it would not create a fiduciary duty. *Id.* The court emphasized that "while it is true that a person who acquires special knowledge or information by virtue of a confidential or fiduciary relationship with another is not free to exploit that knowledge, the confidential relationship must predate the repose of trust or confidence." *Id.* at 343; *see also Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01 Civ. 10726, 2003 WL 470611, at *6 (S.D.N.Y. Feb. 25, 2003) (alleged knowledge by bank that plaintiffs transferred funds to sub-account created by alleged fraudster insufficient to establish fiduciary duty). In this case, Plaintiffs have likewise failed to establish the existence of a fiduciary duty and their breach of fiduciary duty claim should therefore be dismissed.

## II. Plaintiffs' Negligence and Gross Negligence Claims Fail Because TD Bank Did Not Owe A Duty Of Care To Plaintiffs, Who Were Not TD Bank Customers.

Plaintiffs' negligence-based claims against TD Bank are meritless. To state a negligence claim in New York, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). The same elements (plus an "aggravated" level of

conduct, discussed further *infra*) are required to establish gross negligence. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 495 (S.D.N.Y. 2001). As a threshold matter under either claim, then, Plaintiffs must adequately plead that TD owed them a duty of care. *Musalli*, 261 F.R.D. at 27 ("The issue of whether a duty of care was owed by the Defendants to [plaintiff] is a question of law that the Court may properly determine on a motion to dismiss."); *East Meadow Driving Sch., Inc. v. Bell Atl. Yellow Pages Co.*, 708 N.Y.S.2d 701, 703 (N.Y. App. Div. 2000) ("[T]he existence of a duty is necessary to state a cause of action for gross negligence."). Plaintiffs do not allege facts demonstrating that TD Bank owed them any duty, and therefore their negligence-based claims must fail.

Under settled law, TD Bank does not owe a duty of care to non-customers such as Plaintiffs. *Lerner*, 459 F.3d at 286 ("[B]anks do not owe non-customers a duty to protect them from the intentional torts of their customers."); *Musalli*, 261 F.R.D. at 27 (same); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 20 (2d Cir. 2011) ("Banks generally do not owe non-customers a duty to protect them from fraud perpetrated by customers."); *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) ("[I]t is well-settled that a bank owes no … duty to a non-customer third-party" to "prevent [its] customer … from defrauding [the non-customer]"). Indeed, "to find otherwise would unreasonably expand a 'bank['s] orbit of duty.'" *Musalli*, 261 F.R.D. at 27.

Plaintiffs do not allege that they were customers of TD Bank. Consequently, TD does not owe Plaintiffs a duty of care, and Plaintiffs' claims for negligence and gross negligence against TD Bank should be dismissed. *See Musalli*, 261 F.R.D. at 27 (dismissing negligence claim against bank because plaintiff was not "a customer of the bank" and therefore "no cognizable duty of care of the bank to [plaintiff] was sufficiently pleaded"); *Tzaras*, 2003 WL 470611, at *6 (dismissing

negligence claim against bank where bank allowed wire transfer from non-customer plaintiff to bank's customer to be completed); *Renner*, 1999 WL 47239, at *13 (dismissing negligence claim against bank where non-customer plaintiff's funds were deposited into bank customer's account and then diverted); *East Meadow*, 708 N.Y.S.2d at 703 (finding plaintiff should not have been given leave to add gross negligence claim to complaint because plaintiff could not allege the existence of a duty).

Plaintiffs cannot rely on the terms of the Escrow Agreement to impose a duty of care on TD Bank to Plaintiffs. TD Bank was indisputably not a party to the Escrow Agreement – a fact that Plaintiffs have only underscored by now dropping their claim for breach of contract against TD Bank – and was accordingly not bound by the purported terms of the Escrow Agreement. Plaintiffs cannot sidestep the well-settled legal principle that banks do not owe a duty of care to non-customers or the fact that TD Bank was not a party to the Escrow Agreement simply by making the expedient assertion that TD Bank was aware of the Escrow Agreement and allegedly "took no action to disavow or dispute [the Escrow Agreement's] provisions." Am. Compl. ¶ 53. To satisfy the duty element of their claims, Plaintiffs would have to show some alleged actions by TD Bank demonstrating that TD undertook a duty to act with care to plaintiffs. *See Kolbeck v. LIT Am., Inc.,* 923 F. Supp. 557, 572 (S.D.N.Y. 1996) (dismissing negligence claim against broker because plaintiff failed to identify any facts indicating that broker assumed duty of care to plaintiff), *aff'd*, 152 F.3d 918 (2d Cir. 1998). Plaintiffs have not made this showing. Accordingly, for this reason and for the reasons that Plaintiffs' fiduciary duty claim fails, Plaintiffs' negligence claims against TD Bank should be dismissed.

**III.   Plaintiffs' Gross Negligence Claim Fails For The Additional Reason That Plaintiffs Have Not Alleged TD Bank Engaged In Conduct Rising To The Level Of Gross Negligence.**

Because Plaintiffs cannot state a claim for "ordinary negligence," their claim for gross negligence "must necessarily fail." *Farash v. Cont'l Airlines, Inc.* 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009).  Beyond this failing, their gross negligence claim cannot survive on its own merit.  "[T]he act or omission" sustaining a gross negligence claim "must be of an aggravated character, as distinguished from the failure to exercise ordinary care." *Cromer*, 137 F. Supp. 2d at 495.  As a result, to state a claim for gross negligence, the plaintiff must allege conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Farash*, 574 F. Supp. 2d at 368.

Plaintiffs assert that TD Bank's conduct was "an extreme departure from what a reasonably careful person would do" because TD "did nothing to verify that the incoming 'funds' were liquid." Am. Compl. ¶¶ 56-57.  Plaintiffs conveniently ignore that verifying the liquidity of ACV's funds was Plaintiffs' responsibility under the terms of the very Escrow Instructions on which they rely.  Am. Compl. Ex. 4, ¶ 2 ("[Qube] and associated parties shall make a determination of acceptance or rejection of the presented SWIFT via email to NGE.").  Even aside from this, Plaintiffs have not alleged any specific facts to show that TD Bank acted in a grossly negligent manner.  Plaintiffs allege, only in the most conclusory manner, that TD Bank's conduct "falls somewhere on the spectrum from mismanagement to fraud" (Am. Compl. ¶ 27) and "was careless at best and corrupt at worst" (*id.* ¶ 30).  Such "conclusory assertion[s]" regarding TD Bank's actions are "unsupported by any factual allegations of conduct evincing a reckless disregard for the rights of others or smacking of intentional wrongdoing" and therefore are "insufficient to state a cause of action alleging gross negligence." *Mancuso v. Rubin*, 861 N.Y.S.2d 79, 82 (N.Y. App. Div. 2008) (affirming dismissal of gross negligence claim because of inadequate allegations

regarding nature of defendant's conduct); *see also Farash*, 574 F. Supp. 2d at 368 (dismissing gross negligence claim where "the allegations set forth in the complaint come nowhere close to establishing the recklessness or intentional wrongdoing required under the fourth element of gross negligence"). Therefore, Plaintiffs' gross negligence claim against TD Bank should be dismissed.

**IV.     Plaintiffs' Tortious Interference Claim Fails Because Plaintiffs Have Not Plausibly Alleged That TD Bank Acted With Intent To Procure A Breach Of Contract.**

Plaintiffs' newly added claim for tortious interference against TD Bank does not withstand scrutiny. To state a claim for tortious interference under New York law, a plaintiff must allege (1) "the existence of a valid contract between the plaintiff and a third party," (2) "defendant's knowledge of that contract," (3) "defendant's intentional procurement of the third-party's breach of the contract without justification," (4) "actual breach of the contract," and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996).

Plaintiffs have failed to allege any well-pleaded factual allegations to support their tortious interference claim. Initially, as demonstrated above, Plaintiffs have failed to adequately allege that TD Bank was aware of the existence or the terms of the Escrow Agreement. *See supra* p. 7; *Plasticware, LLC v. Flint Hills Resources, LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (dismissing tortious interference claim because plaintiffs failed to adequately allege that defendant was aware of relevant contract).

Plaintiffs also have failed to offer any allegations to show that TD Bank "intentionally procured" Padell's or Richmond's breach of the Escrow Agreement. *See Plasticware*, 852 F. Supp. 2d at 404 (dismissing tortious interference claim because plaintiffs failed to allege "that Defendant took any actions toward third parties with which Plaintiff had contracts"). The Amended Complaint contains no allegations suggesting the kind of purposeful conduct required to

support a tortious interference claim. *See Lama Holding Co.*, 88 N.Y.2d at 424-25 (affirming dismissal of tortious interference claim where conclusory allegation that defendant "wrongfully interfered with and frustrated the performance of plaintiff's agreement" did not adequately plead that defendant intentionally procured breach of contract). The tortious interference section of the Amended Complaint does not even mention the signatories to the Escrow Agreement, Padell and Richmond. Distilled down, Plaintiffs' tortious interference claim appears to be nothing more than another improper attempt by Plaintiffs to impose the terms of the Escrow Agreement on TD Bank and make TD Bank responsible for the alleged misconduct of other parties. Accordingly, Plaintiffs' tortious interference claim against TD Bank should be dismissed.

## V. Dismissal With Prejudice Is Appropriate Where, As Here, Amendment Would Be Futile.

Dismissal with prejudice is appropriate where amendment of the complaint would be futile. *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (affirming dismissal with prejudice based on futility of amendment). Here, further amendment of Plaintiffs' complaint would be futile. TD Bank was not a party to any written agreement with Plaintiffs and did not have a business relationship with Plaintiffs. Plaintiffs were not accountholders of TD Bank. The account in question was opened and controlled by defendant Bert Padell. In two complaints, plaintiffs have asserted claims for breach of contract, fraud, conversion, negligence, gross negligence and breach of fiduciary duty. None of these claims have merit. At bottom, Plaintiffs' claims are all based on nothing more than the allegation that the funds disputed in this lawsuit were deposited in Padell's account at TD Bank. Accordingly, Plaintiffs' Amended Complaint against TD Bank should be dismissed with prejudice. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 140 (2d Cir. 2011) (affirming dismissal with prejudice where plaintiffs had twice amended complaint and further amendment would be futile).

## CONCLUSION

For the foregoing reasons, Defendant TD Bank, N.A. respectfully requests that this Court dismiss the Amended Complaint with prejudice.

Dated: February 27, 2014
      New York, NY

Respectfully submitted,

TD BANK, N.A.

By: */s/ Seth M. Kean*
    Seth M. Kean
    REED SMITH LLP
    599 Lexington Avenue
    New York, NY 10022-7650
    Telephone: +1 212 521 5400
    Facsimile: +1 212 521 5450
    skean@reedsmith.com

    Mary J. Hackett
    Nellie E. Hestin
    REED SMITH LLP
    225 Fifth Avenue
    Pittsburgh, PA 15222-2724
    Telephone: +1 412 288 3131
    Facsimile: +1 412 288 3063
    mhackett@reedsmith.com
    nhestin@reedsmith.com

    *Counsel for Defendant TD Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2014, the foregoing document was electronically filed with the Court's electronic filing system and will be served on all Parties and their counsel of record using the Court's electronic filing system and will be served on non-CM/ECF users via first-class U.S. mail.

*/s/ Seth M. Kean*
Seth M. Kean

*Counsel for Defendant TD Bank, N.A.*
