**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
QUBE FILMS, LTD., NAVID SOOFI and
MATT KELLEY FILMS, LTD.,

                                           **Case No.: 13-CV-8405 (AJN)**

                    Plaintiffs,

        -against-

BERT PADELL, PADELL AND COMPANY and
T.D. BANK LTD.,

                    Defendants.

-----------------------------------------------------------------------X

### MEMORANDUM OF LAW SUBMITTED ON BEHALF OF DEFENDANT BERT PADELL IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT, PURSUANT TO FED. R. CIV. P. 56

**Of Counsel**
Mark K. Anesh
Anthony J. Proscia

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Attorneys for Defendant Bert Padell*
77 Water Street, Suite 2100
New York, New York 10005
T: (212) 232-1300
Our File No.: 33337.12

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………...1

STATEMENT OF UNDISPUTED FACTS………………………………………………...1

    A.    Procedural History……………………………………………………………1

    B.    Facts Elicited During Discovery……………………………………………2

        i.    Underlying Transaction…………………………………………………2

        ii.    The Written Agreements between the Parties…………………………3

            (a)    The Original Deal Sheet…………………………………………3

            (b)    The Escrow Agreement…………………………………………4

            (c)    The Amended Deal Sheet………………………………………6

            (d)    March 14, 2011 Escrow Instructions…………………………7

            (e)    The Pre-Advice…………………………………………………7

            (f)    March 15, 2011 Escrow Instruction……………………………8

            (g)    The Second Amended Deal Sheet………………………………8

        iii.    Escrow Account Documents……………………………………………9

        iv.    Kelly and Kelly Films' Receipt of a Disbursement
from the Escrow Account for the Sum of $50,000.00…………………9

        v.    Kelly and Kelly Films' Settlement and Release
of Claims as Against Grier Enterprises and Grier……………………9

ARGUMENT………………………………………………………………………10

    POINT I:    STANDARD OF REVIEW………………………………………10

    POINT II:    PLAINTIFFS' CLAIMS AGAINST THE MOVING
DEFENDANT SOUNDING BREACH OF CONTRACT; BREACH
OF FIDUCIARY DUTY; AND ORDINARY NEGLIGENCE ARE
BARRED BY THE ESCROW AGREEMENT……………………13

POINT III:      PLAINTIFFS CANNOT DEMONSTRATE THAT THE
                MOVING DEFENDANT BREACHED ANY DUTY OWED TO
                THEM UNDER THE TERMS OF THE ESCROW AGREEMENT;
                OR THAT ANY SUCH BREACH CONSTITUTED GROSS
                NEGLIGENCE OR WILLFUL MISCONDUCT................................14

POINT IV:       PLAINTIFFS CANNOT DEMONSTRATE THAT ANY
                MATERIAL QUESTIONS OF FACT EXIST WITH RESPECT
                TO PLAINTIFFS CLAIMS SOUNDING IN FRAUD.........................19

POINT V:        PLAINTIFFS HAVE NOT SUSTAINED ANY ACTUAL
                AND ASCERTAINABLE DAMAGES...........................................20

POINT VI:       PLAINTIFFS ARE NOT ENTITLED TO RECOVER
                ANY CONSEQUENTIAL DAMAGES, PUNITIVE DAMAGES,
                OR INTEREST ON ANY JUDGMENT.......................................21

CONCLUSION..................................................................................................22

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted, along with the Declaration of Mark K. Anesh, dated March 9, 2015 and the exhibits annexed thereto (hereinafter, the "Anesh Declaration" or "Anesh Decl."); along with the Local Rule 56.1 Statement of Material and Undisputed Facts, dated March 9, 2015 ("Rule 56.1 Statement"), on behalf of the Defendant BERT PADELL ("Moving Defendant") in support of his motion for an Order: (i) pursuant to Fed. R. Civ. P. 56, granting summary judgment in his favor and dismissing the First Amended Verified Complaint of Plaintiffs Qube Films, Ltd. ("Qube Films"), Navid Soofi ("Soofi"), and Matt Kelly Films, Ltd. ("Kelly Films") (collectively "Plaintiffs"); and (ii) for such other and further relief as this Court deems just and proper.

## STATEMENT OF UNDISPUTED FACTS

### A.   Procedural History

On or about November 25, 2013, Plaintiffs commenced the instant action by filing their complaint in the United States District Court for the Southern District of New York, styled *Qube Films, Ltd., Navid Soofi and Matt Kelley Films, Ltd. v. Bert Padell, Padell and Company, and T.D. Bank Ltd.* Plaintiffs assert claims against the Moving Defendant sounding in (1) breach of contract; (2) breach of fiduciary duty; (3) negligence; (4) fraud; and (5) and conversion; and they seek (i) $900,000.00, the funds that passed through the escrow account; (ii) $250,000.00 in consequential damages; and (iii) over $1 million in punitive damages. [Rule 56.1 Statement, at ¶1.]

The Moving Defendant interposed an Answer, denying all pertinent allegations and asserting numerous affirmative defenses. [Rule 56.1 Statement, at ¶2.] Plaintiffs also commenced the instant action against co-defendants T.D. Bank, N.A. and Padell and Company. [Rule 56.1 Statement, at

¶1.]  T.D. Bank's motion to dismiss Plaintiffs' claims against it was granted in its entirety [Docket No. 40], and Padell and Company has defaulted.[1]

## B.    Facts Elicited During Discovery

For judicial brevity, the pertinent facts are set forth more fully the Local Rule 56.1 Statement of Material and Undisputed Facts, which is incorporated by reference and repeated herein where necessary.

### i.    *The Underlying Transaction*

Plaintiffs are sophisticated business persons and entities, with significant prior experience within the film industry.  [Rule 56.1 Statement, at ¶¶6-14.]  However, desperate to obtain financing for a film project, Plaintiffs entered into a number of written agreements with non-party entities Napoleon Grier Enterprises ("Grier Enterprises") and Ark Capital Ventures ("Capital Ventures"). [Rule 56.1 Statement, at ¶¶16-17.]  Plaintiffs had never done business with, nor had they previously met Grier Enterprises and Capital Ventures' principals, Napoleon Grier ("Grier") and Vaughn Richmond ("Richmond"), respectively.   [Rule 56.1 Statement, at ¶19.]   Plaintiffs were not introduced to Grier and Richmond by Moving Defendant.  [Rule 56.1 Statement, at ¶¶23-24.] Instead, Matt Kelly, as principal of Kelly Films, was introduced to Grier through a series of e-mail communications with persons that he had likewise never done business with, including non-parties Harrison Freed, Brandon Dozier and Joe Velardo.  [Rule 56.1 Statement, at ¶¶20-25.]  Despite not knowing them or having any prior dealings, Plaintiffs took no steps to conduct an investigation, nor did they conduct any due diligence, into the background or prior business dealings of either Grier, Grier Enterprises, Richmond and/or Capital Ventures.  [Rule 56.1 Statement, at ¶26.]  Instead,

---

[1] There is no evidence, documentary or otherwise, showing that the Moving Defendant has or had a financial or ownership interest in Padell and Company.

Plaintiffs asked their own counsel, Doran Chandler, Esq., to review the proposed documents relating to the financing agreement, and thereafter executed them. [Rule 56.1 Statement, at ¶¶32-33 and 39.]

Plaintiffs now assert that Grier and Richmond, through their entities, took advantage of them and committed a fraud upon them, by improperly taking the money being held in escrow for the film financing transaction. [Rule 56.1 Statement, at ¶27.] Despite this alleged fraudulent scheme concocted by Grier and Richmond, Plaintiffs have not sued Grier Enterprises, Grier, Capital Ventures and/or Richmond, even after Grier and/or Richmond allegedly absconded with money involved in the transaction at issue. [Rule 56.1 Statement, at ¶28.] Instead, they commenced the instant action against the Moving Defendant who served only as the escrow agent for the transaction. [Rule 56.1 Statement, at ¶¶1 and 38-49.] Moving Defendant's role was limited to an agreement to act as the escrow agent for Plaintiffs' transaction with non-parties Grier Enterprises and Capital Ventures, involving the production of a movie – <u>Salesmen</u>. [Rule 56.1 Statement, at ¶¶42 and 44-49.] In sum, Plaintiffs allege that they entered into an arrangement whereby: (i) Capital Ventures, Grier Enterprises and their principals would assist Plaintiffs in raising funds to produce the film; and (ii) the Moving Defendant would act as escrow agent and control the funds contributed by Plaintiffs, Capital Ventures and/or Grier Enterprises. [Rule 56.1 Statement, at ¶¶36-37.] Plaintiffs now claim that the Moving Defendant improperly released Plaintiffs' funds from the escrow account to Grier, Grier Enterprise and Capital Ventures. [Rule 56.1 Statement, at ¶3.]

## ii. *The Written Agreements between the Parties*

### (a) *The Original Deal Sheet*

On March 8, 2011, Capital Ventures, Grier Enterprises and Plaintiffs entered into and executed a Deal Sheet (the "Original Deal Sheet"). [Rule 56.1 Statement, at ¶30.] The Moving Defendant neither reviewed nor was a signatory to the Original Deal Sheet in any capacity. [Rule

56.1 Statement, at ¶¶31-33.]  Instead, as conceded by Soofi, he retained separate counsel on behalf of Qube Films and Kelly Films to review the Original Deal Sheet.  [Rule 56.1 Statement, at ¶¶32-33.]  Soofi acknowledged that his counsel, Doran Chandler, Esq. from Roberts & Stahl (a Vancouver firm), provided him, Qube Films and Kelly Films with comments regarding the Original Deal Sheet, which is memorialized in an e-mail from his counsel.  [Rule 56.1 Statement, at ¶33.]  Both Kelly and Soofi conceded during their depositions that they knowingly, willingly and voluntarily executed the Original Deal Sheet with the advice of counsel from Roberts & Stahl.  [Rule 56.1 Statement, at ¶35.]

The Original Deal Sheet states that Kelly Films and Qube Films, jointly, agreed to arrange for a total of $1.2 million in financing for the movie project, and that Capital Ventures and Grier Enterprises, jointly, would arrange for an additional $4.8 million in financing.  [Rule 56.1 Statement, at ¶36.]  Any financing would be held in escrow and "[t]he escrowed funds [would] be released … in accordance with the Escrow Agreement."  [Rule 56.1 Statement, at ¶37.]

### (b)    The Escrow Agreement

In conjunction with the Original Deal Sheet, Kelly Films, Qube Films, Capital Ventures and Grier Enterprises entered into and executed an Escrow Agreement, dated March 8, 2011 (the "Escrow Agreement").  [Rule 56.1 Statement, at ¶38.]  The Escrow Agreement was also part of the transaction paperwork reviewed and commented on by Plaintiffs' counsel.  [Rule 56.1 Statement, at ¶39.]  Again, Soofi and Kelly conceded during their depositions that they knowingly, willingly and voluntarily executed the Escrow Agreement with the advice of counsel from Roberts & Stahl.  [Rule 56.1 Statement, at ¶41.]

After the Escrow Agreement was reviewed and approved by Roberts & Stahl, the Moving Defendant also executed the Escrow Agreement, acknowledging that he agreed to act as the escrow agent and to be bound by the terms of the Escrow Agreement only.  [Rule 56.1 Statement, at ¶42.]

The Escrow Agreement entitles the Moving Defendant to a $10,000.00 fee to act as escrow agent. [Rule 56.1 Statement, at ¶43.]  Pursuant to the express terms within the Escrow Agreement, the Moving Defendant's duties and obligations are "determined solely by the express provisions of [the Escrow Agreement] and no [additional] duties, responsibilities, or obligations shall be inferred or implied."  [Rule 56.1 Statement, at ¶44.]  The Escrow Agreement further states that the Moving Defendant did not undertake certain duties and obligations and as such, cannot be held liable for the following,

- "for any calculation or sufficiency of funds;"
- "to inquire as to the performance or observation of any obligation, term or condition … between Depositor and Service Provider [Capital Ventures and Grier Enterprises];"
- "shall not have any responsibility to determine the authenticity or validity of any notice, direction, instruction, document or other items delivered to it by any party;" or
- "is authorized to comply with and rely upon any notice … believed by [him] to have been sent or given by Depositor."

[Rule 56.1 Statement, at ¶45.]

In addition, the Escrow Agreement provides that the Moving Defendant "is not bound by, or required to comply with any agreement or other document out of which this Agreement may arise. …[the Moving Defendant] shall not be obliged to recognize or be chargeable with knowledge of any of the terms or conditions" in any other agreement between Kelly Films, Qube Films, Capital Ventures and Grier Enterprises.  [Rule 56.1 Statement, at ¶46.]

Furthermore, the Escrow Agreement expressly states that the Moving Defendant is "authorized to comply with and rely on any notice, direction, instruction or other communication believed by [him] to have been sent or given by Depositor [defined as Kelly Films and Qube Films]."  [Rule 56.1 Statement, at ¶47.]

Moreover, "[u]pon Escrow Agent's receipt of Depositor's Instruction via email or facsimile, Escrow agent shall and is hereby authorized and directed to withdraw from the Escrow Account," *inter alia*, as follows: "$6 million to Depositors within 15 days of receipt of instruction," or "Depositor [Kelly Films and Qube Films] may instruct Escrow Agent to transfer Escrow Property in full to any account designated by Depositor in such instruction, whereupon Escrow Agent shall and hereby is authorized and directed to withdraw from the Escrow Account and pay the same as instructed by Depositor." [Rule 56.1 Statement, at ¶48.]

Finally, the Escrow Agreement states that the Moving Defendant can only be held liable for "gross negligence or willful misconduct," and cannot be held liable for consequential damages, punitive damages or any amount in excess of the funds within the Escrow Account. [Rule 56.1 Statement, at ¶49.]

### (c)   *The Amended Deal Sheet*

On or about March 11, 2011, by written agreement, Plaintiffs, Grier Enterprises and Capital Ventures amended the Original Deal Sheet (the "Amended Deal Sheet"). [Rule 56.1 Statement, at ¶50.] The Moving Defendant signed the Amended Deal Sheet, solely as escrow agent. [Rule 56.1 Statement, at ¶55.] The Amended Deal Sheet did not amend the Escrow Agreement and, thus, did not impact, in any way, the limited duties and obligations of the Moving Defendant owed to the Plaintiffs under the Escrow Agreement. [Rule 56.1 Statement, at ¶56.]

Instead, the Amended Deal Sheet acknowledged that $500,000.00 had been deposited into escrow on behalf of Qube Films. [Rule 56.1 Statement, at ¶57.] Qube Films agreed in this document that it would "release the [escrowed] $500,000.00 immediately upon receipt of the pre-advice" from Grier Enterprises and Capital Ventures. [Rule 56.1 Statement, at ¶58.] Further, Qube

Films agreed to have another $700,000.00 deposited in escrow, as its financing obligations still remained $1.2 million on or by March 16, 2011.  [Rule 56.1 Statement, at ¶59.]

### (d)    March 14, 2011 Escrow Instructions

On March 14, 2011, Kelly Films and Qube Films issued escrow instructions to the Moving Defendant (the "March 14 Escrow Instructions").  [Rule 56.1 Statement, at ¶60.]  Pursuant thereto, Kelly Films and Qube Films agreed, as follows,

> The [escrowed] funds shall be used by [Capital Ventures and Grier Enterprises] to secure a beneficial "Prime World Money Center" bank instrument, provided said instrument will be in a form which shall allow for its immediate reconversion into liquid currency.

[Rule 56.1 Statement, at ¶62.]  Capital Ventures and Grier Enterprises were then obligated to present to Plaintiffs a banking instrument "Pre-Advice" for a $3 million line of credit.  [Rule 56.1 Statement, at ¶63.]  "Upon acceptance of the above-mentioned Pre-Advice [Plaintiffs] consent[] to release of the escrow funds already in the IOLA account and [in advance] any additional anticipated funds (on March 16[th]) to the Funder [Capital Ventures and Grier Enterprises] ...."  [Rule 56.1 Statement, at ¶64.]

### (e)    The Pre-Advice

On or about March 15, 2011, Richmond presented to Kelly, Kelly Films, Soofi and Qube Films a Pre-Advice procured for a $3 million line of credit (the "Pre-Advice).  [Rule 56.1 Statement, at ¶65.]  Richmond represented to Kelly, Kelly Films, Soofi and Qube Films that the Pre-Advice was valid and legitimate, and the parties could proceed with the financing arrangement.  [Rule 56.1 Statement, at ¶66.]  The Moving Defendant was subsequently provided with a copy of the Pre-Advice by e-mail from Grier Enterprises.  [Rule 56.1 Statement, at ¶67.]

### (f)   *March 15, 2011 Escrow Instruction*

On March 15, 2011, relying upon Grier Enterprises and Capital Ventures' presentment of the Pre-Advice, Kelly Films and Qube Films issued another fully executed escrow instruction to the Moving Defendant (the "March 15 Escrow Instruction"). [Rule 56.1 Statement, ¶68.] The March 15 Escrow Instruction directed the Moving Defendant, as follows,

> **We hereby instruction (sic) escrow to be released in full,** to be used in creation of the banking instrument and initiate funding for and in the full benefit of Qube Films, Matt Kelley Films and the motion picture, Salesman.

[Rule 56.1 Statement, at ¶70.] The Moving Defendant was advised by e-mail from Grier Enterprises that Plaintiffs were satisfied that it had met the March 14 and March 15 Escrow Instructions' terms. [Rule 56.1 Statement, at ¶71.]

### (g)   *The Second Amended Deal Sheet*

On April 12, 2011, Kelly Films, Qube Films, Capital Ventures and Grier Enterprises finalized the terms of a second amendment to the deal sheet (the "Second Amended Deal Sheet"). [Rule 56.1 Statement, at ¶72.]  While none of the Plaintiffs is in possession of a fully executed Second Amended Deal Sheet, Plaintiffs' Amended Complaint concedes that Kelly Films, Qube Films, Capital Ventures and Grier Enterprises entered into the Second Amended Deal Sheet, and agreed to reduce the movie financing in half.  [Rule 56.1 Statement, at ¶73.]  It was Plaintiffs' understanding that the Second Amended Deal Sheet was finalized to reflect the transition of the financing arrangement from Salesmen to The Apologist. [Rule 56.1 Statement, at ¶74.] As a result, Kelly Films and Qube Films were obligated to deposit $600,000.00; and Capital Ventures and Grier Enterprises were obligated to obtain funding for the remaining $2.4 million. [Rule 56.1 Statement, at ¶75.] The Moving Defendant was not a signatory to the Second Amended Deal Sheet, [Rule 56.1

Statement, at ¶76], nor was there any evidence elicited during discovery to demonstrate that he reviewed,, comments or gave any advice regarding same.

Pertinent to Plaintiffs' claims herein, Kelly Films and Qube Films acknowledged in the Second Amended Deal Sheet that, as of April of 2011, $600,000.00 had already been released from the Escrow Account.  [Rule 56.1 Statement, at ¶77.]

### iii.   *Escrow Account Documents*

On or about December 31, 2010, the Moving Defendant opened an escrow account, later associated with the transaction between Kelly Films, Qube Films, Grier Enterprises and Capital Ventures.  Between March 11, 2011 and March 28, 2011, non-party Cube Productions Inc. wired $900,743.97 into the escrow account.  [Rule 56.1 Statement, at ¶79.]

Kelly and Kelly Films did not provide any funds to be used to finance Salesmen. [Rule 56.1 Statement, at ¶80.] Kelly Films conceded during its deposition that it has not sustained any damages as a result of the underlying business transaction with Grier Enterprises and Capital Ventures. [Rule 56.1 Statement, at ¶81.]

### iv.   *Kelly and Kelly Films' Receipt of a Disbursement from the Escrow Account for the Sum of $50,000.00*

On April 29, 2011, at Kelly's request, $50,000.00 was released from the escrow account to Kelly Films for the second film project, The Apologist, in accordance with the terms of the film financing agreement between Plaintiffs, Grier Enterprises and Capital Ventures.   [Rule 56.1 Statement, at ¶82.]

### v.   *Kelly and Kelly Films' Settlement and Release of Claims as Against Grier Enterprises and Grier*

In or about November, 2011, Kelly, individually and on behalf of Kelly Films, entered into a settlement agreement with Grier and Grier Enterprises (the "Kelly Release"). [Rule 56.1 Statement,

at ¶83.]  As part of the settlement, Kelly Films agreed to a general release of any and all claims it

may have had as against, among others, Grier and Grier Enterprises.  [Rule 56.1 Statement, at ¶84.]

As consideration for the Kelly Release, Kelly Films agreed to accept the total sum of $25,000.00.

[Rule 56.1 Statement, at ¶85, at ¶1.]  Notably, Kelly and Kelly Films "agree[d] to indemnify and

hold harmless [Grier and Grier Enterprises] from any and all claims filed ... by any third party

inclusive of Qube Films and Navid Soofi arising out of or involving any transactions or

contemplated transactions."  [Rule 56.1 Statement, at ¶86.]  Kelly voluntarily executed the Kelly

Release on behalf of himself and Kelly Films.  [Rule 56.1 Statement, at ¶87.]  Kelly received the

$25,000.00 settlement funds on September 21, 2011.  [Rule 56.1 Statement, at ¶88.]  Kelly advised

Soofi that he accepted the Kelly Release funds because he was desperate for money.  [Rule 56.1

Statement, at ¶89.]

## ARGUMENT

### POINT I

### <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the "pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P.56(C).  A fact is material if it might affect the outcome of the suit under the

governing law, and genuine only if a jury could reasonably find in favor of the non-moving party

based upon that fact.  *Holtz v. Rockefeller & Company*, 258 F.3d 62, 69 (2nd Cir. 2001).  The moving

party bears the burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has asserted facts showing that the non-moving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2nd Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment … [m]ere conclusory allegations … cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2nd Cir. 2010) (internal citations omitted);

An otherwise properly supported summary judgment motion will not be defeated because of the mere existence of some alleged factual dispute between the parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1968) (only disputes relating to "facts that might affect the outcome of the suit under the governing law" will preclude summary judgment); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the non-moving party that is so "blatantly contradicted by the record … that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Despite their self-serving and conclusory allegations, Plaintiffs cannot establish, by a preponderance of the evidence, that the Moving Defendant breached his duties as escrow agent, given the undisputed facts establishing that he released funds from the escrow account (i) in accordance with the terms of the executed Escrow Agreement; and (ii) based upon the express, written instructions he received from the Plaintiffs. Further, it is undisputed that the express terms of the Escrow Agreement between the parties provide that the Moving Defendant had no duty, obligation and/or responsibility to perform the acts Plaintiffs claim he failed to perform.

Nevertheless, even if he had a duty, there are no facts to sustain Plaintiffs' breach claim. Moving Defendant cannot be held liable for the claims asserted against him by the Plaintiffs sounding in ordinary negligence, breach of contract or breach of fiduciary duty. Specifically, Plaintiffs must demonstrate, per the Escrow Agreement's clear and unambiguous terms, that any purported breach by the Moving Defendant constituted "gross negligence or willful misconduct." Plaintiffs have come forward with no facts to demonstrate that the Moving Defendant's conduct constituted gross negligence, nor can they demonstrate that the Moving Defendant knowingly and actively participated in the Grier and Richmond fraudulent scheme alleged by Plaintiffs.

Moreover, regardless of whether the Moving Defendant did actually breach a duty owed to Plaintiffs under the Escrow Agreement (which requires it to be in the form of gross negligence or willful misconduct), Plaintiffs have not established that they sustained any damages. Kelly, on behalf of Kelly Films, admitted during his deposition that Kelly Films did not deposit or wire any money into the escrow account, and that it did not sustain any monetary loss as a result of the transaction with Grier Enterprises and Capital Ventures. Additionally, the documentary evidence in the form of bank statements, as supplemented by the deposition testimony of Soofi (on behalf of himself and Qube Films), conclusively demonstrates that neither Plaintiff Soofi nor Qube Films deposited or wired any funds into the escrow account. Instead, the funds that were being held in the escrow account were wired by non-party Cube Productions, Inc. – a separate and distinct entity from Plaintiff Qube Films, Ltd. Accordingly, the undisputed facts establish that neither Soofi, Qube Films nor Kelly Films themselves sustained any actual damages as a result of their transaction with Grier Enterprises and Capital Ventures, or due to any alleged conduct and/or omissions of the Moving Defendant.

Given the foregoing, which is set forth more fully below, the Moving Defendant is entitled to summary judgment and the dismissal of Plaintiffs' Amended Complaint against him, as a matter of law.

## POINT II

### PLAINTIFFS' CLAIMS AGAINST THE MOVING DEFENDANT SOUNDING IN BREACH OF CONTRACT; BREACH OF FIDUCIARY DUTY; AND ORDINARY NEGLIGENCE ARE BARRED BY THE ESCROW AGREEMENT

Based upon the undisputed facts and as a matter of law, Plaintiffs' claims against the Moving Defendant sounding in (1) ordinary negligence; (2) breach of contract; and (3) breach of fiduciary duty are barred. Here, the Escrow Agreement expressly states that Plaintiffs may only assert claims against the Moving Defendant sounding in "gross negligence or willful misconduct." [Rule 56.1 Statement, at ¶49.] The New York State Court of Appeals has held that "[a]s a general rule, parties are free to enter into contracts that absolve a party from its own negligence." *Abacus Fed. Sav. Bank v ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 682-83 (2012), *citing Melodee Lane Lingerie Co. v American Dist. Tel. Co.*, 18 N.Y.2d 57, 69 (1966) (a no-action clause within an agreement is enforceable so long as it does not exculpate a party from conduct involving gross negligence or intentional wrongdoing). As such, the provision within the Escrow Agreement herein is completely enforceable and the Moving Defendant is therefore entitled to summary judgment and the dismissal of the claims sounding in ordinary negligence, breach of contract and breach of fiduciary duty asserted against him within the Amended Complaint.

## POINT III

### PLAINTIFFS CANNOT DEMONSTRATE THAT THE MOVING DEFENDANT BREACHED ANY DUTY OWED TO THEM UNDER THE TERMS OF THE ESCROW AGREEMENT; OR THAT ANY SUCH BREACH CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT

The undisputed evidence establishes that the Moving Defendant's duties and obligations as escrow agent were limited in scope by the Escrow Agreement. [Rule 56.1 Statement, at ¶44.] *See H&H Acquisition Corp. v. Fin. Intranet Holdings, Inc.*, 669 F. Supp. 2d 351, 363-64 (S.D.N.Y. 2009) (finding that "parties to an escrow agreement cannot impose upon [the escrow agent] any obligations in addition to its limited duties under the express terms of its contract."). Likewise, the undisputed evidence establishes that the Moving Defendant was permitted to release escrow funds, either to Plaintiffs, to Capital Ventures, to Grier Enterprises, or to anyone else, based upon his receipt of escrow instructions. [Rule 56.1 Statement, at ¶48.] Finally, the undisputed evidence establishes that the Moving Defendant was under no obligation to verify the instructions with anyone; did not need to confirm the validity or authenticity of the instruction; did not need to review any other agreements between the parties; and did not need to ensure that any of the parties had complied with any obligations they may have had to each other. [Rule 56.1 Statement, at ¶¶45-46.] Accordingly, given the Moving Defendant's limited scope of duties under the Escrow Agreement, and his reliance upon Plaintiffs' issuance of the March 14 and March 15 Escrow Instructions, Plaintiff cannot establish, by a preponderance of the evidence, that the Moving Defendant breached a duty owed to them pursuant to the Escrow Agreement. *See Ray Legal Consulting Group v. Dijoseph*, 37 F. Supp. 3d 704 (S.D.N.Y. 2014) (holding that defendant did not breach its fiduciary duty because it acted in accordance with its obligations under the escrow agreement).

Even if there exists a question of fact as to whether the Moving Defendant breached a duty owed to Plaintiffs as escrow agent (a proposition expressly belied by the undisputed evidence),

Plaintiffs cannot demonstrate, as they must, that such a breach constituted "gross negligence or willful misconduct" as required under the express terms of the Escrow Agreement. [Rule 56.1 Statement, at ¶49.] It is undisputed that the Plaintiffs executed and issued (i) the March 14 Escrow Instructions, wherein Kelly Films and Qube Films "consent[ed] to release of the escrow funds already in the IOLA account and any additional anticipated funds" [Rule 56.1 Statement, at ¶64]; and (ii) the March 15 Escrow Instruction, wherein the Plaintiffs issued an instruction releasing the escrow funds "in full." [Rule 56.1 Statement, at ¶70.] Accordingly, the Moving Defendant's release of any funds from the escrow account to Grier Enterprises [Rule 56.1 Statement, at ¶64]; the $100,000.00 disbursed to the Moving Defendant for his escrow agent fee and to cover the banking charges [Rule 56.1 Statement, at ¶¶43 and 77]; and the disbursement of $50,000.00 to Kelly Films for a second film project, The Apologist [Rule 56.1 Statement, at ¶82], were permissible and mandated by the terms and conditions of the Original Deal Sheet (as amended), the Escrow Agreement, and by the March 14 and the March 15 Escrow Instructions.

Reliance upon the terms of the Escrow Agreement, along with receipt of the Escrow Instructions, was wholly proper and the Moving Defendant acted in good faith in executing his obligations as escrow agent. *See H&H Acquisition Corp. v. Fin. Intranet Holdings, Inc.,* 669 F. Supp. 2d 351, 363 (S.D.N.Y. 2009) (dismissing the plaintiff's claim for breach of fiduciary duty where the defendant acted in accordance with the terms of the escrow agreement). Since Plaintiffs have not established otherwise, the Moving Defendant cannot therefore be deemed liable to them for any "gross negligence or willful misconduct" as escrow agent in the underlying transaction. *See Herman v. Berson,* 2010 U.S. Dist. LEXIS 144386, at *15 (S.D.N.Y. 2010) (holding that plaintiffs were entitled to summary judgment based on claims for, *inter alia*, gross negligence and breach of fiduciary duty, where defendants made numerous financial misrepresentations in order to defraud the

investor-plaintiffs); *see also 380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 234 (S.D.N.Y. 2008) (holding that intentionally withholding information for the purpose of extorting the board of directors constituted willful conduct).

Given these undisputed facts and conclusions of law absolving the Moving Defendant of liability, Plaintiffs will endeavor to convince this Court that the Moving Defendant should have determined the Pre-Advice was fraudulent. However, the fact that Grier Enterprises, Grier, Capital Ventures and/or Richmond may have provided Plaintiffs with a fraudulent Pre-Advice with respect to the securitization of a $3 million line of credit is not pertinent to whether the Moving Defendant breached a duty owed to Plaintiffs by releasing the funds in accordance with the Plaintiffs' directives. First, that the Pre-Advice was fraudulent is supported only by the conclusory statements of Plaintiffs, which are insufficient to overcome entitlement to judgment on the undisputed facts and law. *See Hicks, supra,* 593 F.3d at 166.

Putting this aside, it is undisputed that Moving Defendant were under no duty or obligation under the Escrow Agreement to ensure any party's conformance with an obligation. [Rule 56.1 Statement, at ¶45.] The Moving Defendant had no duty to confirm the authenticity, validity or veracity of any instruction or document between the parties, including the Pre-Advice. [Rule 56.1 Statement, at ¶¶45 and 47.] Accordingly, the Moving Defendant's purported failure to identify the alleged fraudulent Pre-Advice did not constitute a breach of any duty he owed to Plaintiffs, as he was not obligated to do so under the express terms of the Escrow Agreement.

Likewise, Plaintiffs may argue that the Original Deal Sheet, as amended, the Escrow Agreement, and the Escrow Instructions all required the money being held in escrow only to be released to "NewCo," a new company that was to be formed for the purpose of receiving the funds and for the film project, Salesmen. However, Plaintiffs' assertion regarding the funding of "NewCo"

is also a self-serving conclusory allegation insufficient to overcome the Moving Defendant's entitlement to judgment on the undisputed facts and law. *See Hicks, supra,* 593 F.3d at 166. The record is simply devoid of any facts to support Plaintiffs' summary contention with respect to "NewCo."  Again, the Escrow Agreement limited the Moving Defendant's duties and responsibilities, stating that they shall be "determined solely by the express provisions of [the Escrow Agreement] and no [additional] duties, responsibilities, or obligations shall be inferred or implied." [Rule 56.1 Statement, at ¶¶44 and 45.]  The Escrow Agreement further states that the Moving Defendant "shall not be obliged to recognize or be chargeable with knowledge of any of the terms or conditions" in any other agreement between Kelly Films, Qube Films, Capital Ventures and Grier Enterprises, "notwithstanding that references thereto may be made herein and whether or not it has knowledge thereof." [Rule 56.1 Statement, at ¶46.]

A review of the Escrow Agreement clearly reveals the absence of any reference to "NewCo." Additionally, the provisions within the Escrow Agreement relating to any disbursements from the escrow account do not limit any such disbursement to "NewCo." In fact, the express terms of the Escrow Agreement directed the Moving Defendant to disburse the escrow funds in accordance with any disbursement instructions he received from Plaintiffs. [Rule 56.1 Statement, at ¶48.] As set forth above, Plaintiffs acknowledge that they executed and issued the March 14 and the March 15 Escrow Instructions. Rule 56.1 Statement, at ¶61.] Neither the March 14 Escrow Instructions nor the March 15 Escrow Instruction directed Moving Defendant to disburse the escrow funds to "NewCo." [Rule 56.1 Statement, at ¶¶62, 64 and 70.] Quite the contrary, the March 14 Escrow Instructions and the March 15 Escrow Instruction directed the Moving Defendant to disburse the escrow funds, both within the account and any future funds deposited into the account, **to Grier Enterprises and/or Capital Ventures.** [Rule 56.1 Statement, at ¶¶64 and 70.]  Accordingly,

Plaintiffs' feigned attempt to conflate the Moving Defendant's duties and responsibilities under the terms of the executed Escrow Agreement is equally unavailing.

Finally, the Escrow Agreement contains a merger/superceding clause, which states, in pertinent part, that,

> This Agreement, including all exhibits hereto, supercedes all prior discussions, understandings and agreements between the parties with respect to the matters contained herein, and constitutes the entire agreement between the parties with respect to the matters contemplated herein.

[Anesh Decl., Ex. "I," at §20.] Given the merger clause, Plaintiffs cannot now assert, in an effort to salvage their claims, that they relied upon any purported verbal promise or representation by the Moving Defendant as to his role in the underlying transaction, whether before or after the execution of the Escrow Agreement.

As "sophisticated" business people and entities, Plaintiffs are bound by the clear and unambiguous terms within the Escrow Agreement they executed. *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 ((2002) ("The best evidence of what parties to a written agreement intend is what they say in writing. Thus, a written agreement that is clear, complete and unambiguous on its face must be enforced according to the plain meaning of its terms."); *see also W.W.W. Assocs. V. Giancontieri*, 77 N.Y.2d 157, 163 (1990) ("It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."); *Allen v. Oneida*, 210 N.Y. 496, 504 (1914) (given that the contract was "clear and unambiguous on its face" the "parties [were] bound by the terms of such contract"). Further, Plaintiffs conceded that they knowingly, willingly and voluntarily executed the Escrow Agreement after it was reviewed by their attorney. [Rule 56.1 Statement, at ¶41.] Plaintiffs cannot now assert that they did not understand what they were doing when they entered into the transactions with Grier Enterprises and Capital Ventures, or when they executed the Escrow Agreement related

thereto, particularly given their concessions that they did so on the advice of their counsel from Roberts & Stahl.

Based upon the foregoing, Plaintiffs cannot establish, by a preponderance of the evidence, that the Moving Defendant, breached any duty owed to them under the Escrow Agreement. In the alternative, even if this Court finds that a question of facts exists whether the Moving Defendant did breach a duty owed under the Escrow Agreement, Plaintiffs still cannot establish that such a potential breach constituted "gross negligence or willful misconduct," given the Moving Defendant's reliance upon the March 14 Escrow Instructions and March 15 Escrow Instruction. Either way, Plaintiffs have not, and cannot demonstrate a viable basis to establish a claim as against the Moving Defendant.

## POINT IV

### PLAINTIFFS CANNOT DEMONSTRATE THAT ANY MATERIAL QUESTIONS OF FACT EXIST WITH RESPECT TO PLAINTIFFS' CLAIMS SOUNDING IN FRAUD

In New York, "[t]he elements of a cause of action sounding in fraud are material misrepresentation of an existing fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages." *Orchid Constr. Corp. v. Gottbetter*, 89 A.D.3d 708, 710 (2nd Dep't 2011). With respect to the Plaintiffs' claim sounding in fraud, it is apparent (as detailed above) that the Moving Defendant relied, in good faith, upon the Plaintiffs' execution and issuance of the March 14 and the March 15 Escrow Instructions, prior to the release of any funds from the Escrow Agreement. Given that the Moving Defendant did not have an active obligation to verify the veracity or authentication of either of the Escrow Instructions or the Pre-Advice (as set forth by the Escrow Agreement), [Rule 56.1 Statement, at ¶¶45 and 47], Plaintiffs cannot establish, by clear and convincing evidence, that the Moving Defendant knowingly

made a false misrepresentation to the Plaintiffs, or that he actively participated and/or facilitated a fraudulent scheme involving Grier Enterprises, Grier, Capital Ventures and/or Richmond.

Based upon the foregoing, the Moving Defendant respectfully submits that he is entitled to summary judgment and the dismissal of Plaintiffs' fraud claim against him in the Amended Complaint, as a matter of law.

## POINT V

## PLAINTIFFS HAVE NOT SUSTAINED ANY ACTUAL AND ASCERTAINABLE DAMAGES

Even if Plaintiffs can raise questions of fact as to whether the Moving Defendant's alleged acts, errors and/or omissions constituted "gross negligence or willful misconduct," fraud and/or conversion, they are nevertheless unable to recover as against him because none of them has sustained any actual damages as a result of the underlying transaction.

As an initial point, Kelly testified at his deposition that (1) Kelly Films did not deposit or wire any funds into the escrow account; and (2) Kelly Films did not sustain any damages, monetary or otherwise, as a result of the underlying transaction. [Rule 56.1 Statement, at ¶¶80 and 81.] Additionally, it is undisputed that Kelly Films received the $50,000.00 disbursed from the escrow account for its second film project, The Apologist. [Rule 56.1 Statement, at ¶82.] Moreover, pursuant to the Kelly Release, Kelly and Kelly Films settled any claims it may have had as against Grier Enterprises and/or Grier, and was paid $25,000.00 as a result thereof. [Rule 56.1 Statement, at ¶88.] Accordingly, Kelly Films has not sustained any damages.[2]

Similarly, neither Qube Films nor Soofi has sustained any actual damages as a result of the underlying transaction. A review of the escrow account bank statement indicates that non-party

---

[2] In fact, Kelly Films has netted $75,000.00 from the underlying transaction.

Cube Productions Inc. wired all of the funds into the escrow account at issue. [Rule 56.1 Statement, at ¶79.] While Soofi's family purportedly has a financial interest in non-party Cube Productions, it is clearly a separate and distinct legal entity from Plaintiff Qube Films, Ltd.  In addition, Plaintiffs have not alleged, or provided any documentation to substantiate that non-party Cube Productions' funds that were deposited into the escrow account were actually controlled and/or possessed by Plaintiff Qube Films.  Thus, if anyone was damaged as a result of the underlying transaction, it was non-party Cube Productions, not Soofi or Qube Films.  Accordingly, Qube Films and Soofi have not, and cannot establish that they sustained any actual and ascertainable damages as a result of the underlying transaction.

**POINT VI**

**PLAINTIFFS ARE NOT ENTITLED TO RECOVER ANY CONSEQUENTIAL DAMAGES, PUNITIVE DAMAGES, OR INTEREST ON ANY JUDGMENT**

Even if the Plaintiffs are able to raise questions of fact related to the Moving Defendant's alleged liability (a proposition expressly refuted by the Moving Defendant), the Plaintiffs' recovery related to any such claims is limited since they are not entitled to recover against him for either consequential damages (Plaintiffs seek $250,000.00 in a lost business opportunity) or punitive damages (Plaintiffs seek $1,000,000.00).  As set forth above, the Escrow Agreement limits the Moving Defendant's potential exposure, as it expressly states he cannot be held liable for consequential or punitive damages.  [Rule 56.1 Statement, at ¶49.]

Similarly, the Escrow Agreement limits the Moving Defendant's exposure in that it states he cannot be held liable for "any amount in excess of the Escrow Property."  [Rule 56.1 Statement, at ¶49.]  Accordingly, Plaintiffs will not be entitled to recover any interest on a judgment as against the Moving Defendant as interest would be "in excess" of the funds that were within the escrow account.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant BERT PADELL respectfully requests that this Court

issue an Order, (i) pursuant to Fed. R. Civ. P. 56, granting his motion for summary judgment and

dismissing the Plaintiffs' Amended Complaint as against him, with prejudice, as a matter of law; and

(ii) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 9, 2015

                        **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                        *Attorneys for Defendant Bert Padell*

                        By:        */s/ Mark K. Anesh*
                                    Mark K. Anesh
                                    Anthony J. Proscia
                                    77 Water Street, Suite 2100
                                    New York, New York 10005
                                    T: (212) 232-1300
                                    F: (212) 232-1399
                                    Our File No.: 33337.12